Filed 9/11/13 (unmodified opn. attached)

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
    Plaintiff and Respondent, )
)     S199495
    v. )
)     Ct.App. 6 H036687
RODRIGO MARTINEZ MARTINEZ, )
)     Santa Clara County
    Defendant and Appellant. )     Super. Ct. No. 156569
_____ )

## ORDER MODIFYING OPINION AND
## DENYING PETITION FOR REHEARING

THE COURT:

The opinion herein, filed August 8, 2013, and appearing at 57 Cal.4th 555, is modified as follows:

On page 565 of 57 Cal.4th, delete the sentence reading: "Second, relief is available only to persons who are not otherwise deportable, that is, who have not since their conviction engaged in other conduct that would trigger immigration consequences."

Also on page 565, immediately following the sentence deleted above, replace "Further" with "Second."

This modification does not affect the judgment.

The petition for rehearing is denied.

1

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
      Plaintiff and Respondent, )
)       S199495
v. )
)       Ct.App. 6 H036687
RODRIGO MARTINEZ MARTINEZ, )
)       Santa Clara County
      Defendant and Appellant. )       Super. Ct. No. 156569
_____ )

Penal Code section 1016.5 requires that before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense may result in deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. (Pen. Code, § 1016.5, subd. (a).)[1] If the advisement was not given, and the defendant shows that conviction of the offense to which he or she pleaded guilty or nolo contendere may result in adverse immigration consequences, the court, on the defendant's motion, is required to vacate the judgment and permit the defendant to withdraw his or her plea and enter a plea of not guilty. (*Id.*, subd. (b).) Relief will be granted, however, only if the defendant establishes prejudice. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 210 (*Zamudio*).) As we explained in *Zamudio*,

_____

[1] All further statutory references are to the Penal Code unless otherwise noted.

1

prejudice is shown if the defendant establishes it was reasonably probable he or she would not have pleaded guilty if properly advised. (*Ibid.*)

We granted review to consider whether a court ruling on a motion to vacate pursuant to section 1016.5 may deny relief, for lack of prejudice, if it concludes the defendant would not have obtained a more favorable outcome had he or she chosen not to plead guilty or nolo contendere. We hold that because the question is *what the defendant would have done*, relief should be granted if the court, after considering evidence offered by the parties relevant to that question, determines the defendant would have chosen not to plead guilty or nolo contendere, even if the court also finds it not reasonably probable the defendant would thereby have obtained a more favorable outcome.

Having so concluded, we also consider whether, as defendant contends, the court ruling on the motion may consider a claim that the defendant would have rejected the existing plea bargain to attempt to negotiate a bargain that would not result in deportation, a denial of naturalization, or exclusion from admission to the United States, or if, as the Attorney General contends, relief is available only if the defendant would have rejected the plea bargain to go to trial. We hold relief is available if the defendant establishes he or she would have rejected the existing bargain to accept or attempt to negotiate another.

Because the trial court in this case denied relief on the ground there was no reasonable probability defendant would have obtained a more favorable result by rejecting the plea bargain, which is *not* the test for prejudice, we reverse the judgment of the Court of Appeal affirming the trial court's order denying relief and direct it to remand the matter to the trial court to conduct further proceedings consistent with our opinion here.

BACKGROUND

Arresting officer Frank Estrada was the sole witness at the preliminary hearing. Estrada testified that on May 15, 1992, while undercover, he observed defendant Rodrigo Martinez Martinez hand another man a brown bindle of marijuana in return for what was later determined to be $8. Defendant, an 18-year-old citizen of Mexico, was on a bicycle when the transaction occurred, and was still on the bicycle when Estrada apprehended him approximately one hour later. Defendant had no money on his person. Estrada provided a detailed description of the person he had seen, stating he had no doubt defendant was that man. Defendant was charged with a single count of the sale or transportation of marijuana in violation of Health and Safety Code section 11360, subdivision (a).

Pursuant to the terms of a plea bargain, defendant pleaded guilty to the charged offense and received a sentence of formal probation for a period of three years, a probationary jail term of 111 days with 111 days' credit for time served, and was ordered to pay a fine, register as a narcotics offender, and undergo counseling. The written minute order for the plea proceeding has boxes to be checked for the advisements given a pleading defendant, including a box explaining that a defendant has been advised that the conviction might lead to immigration consequences. Unlike other boxes appearing there, the box referring to the advisement of immigration consequences is not checked. There are no other existing records of the proceedings. We accordingly presume defendant did not receive the required advisement. (§ 1016.5, subd. (b) ["Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement."].)

Defendant successfully completed probation, and nothing in the record suggests he has since had any brushes with the law. He is now in a long-term

marriage to a lawful permanent resident, has four minor children who are United States citizens and, due to his wife's blindness, is the sole support for his family.

In May 2008, upon defendant's application and in accordance with section 1203.4, which authorizes relief to persons who have successfully completed probation, the superior court allowed defendant to withdraw his plea and enter a plea of not guilty, and dismissed the information against him. Defendant's conviction was therefore expunged from his record. That action, however, has no effect on the federal immigration consequences of his conviction. (*Ramirez-Castro v. I.N.S.* (9th Cir. 2002) 287 F.3d 1172, 1174-1175.) Two months later, defendant sought an adjustment in status to lawful permanent residency. His application was denied because of his conviction.[2] Removal proceedings have been initiated against him, and he now faces deportation and permanent exclusion from this country.

In January 2011, defendant filed a motion to vacate his 1992 conviction pursuant to section 1016.5, asserting that, had he been aware that by pleading guilty he would become deportable and permanently barred from the United States, he would have rejected the plea offer and insisted on negotiating a different bargain without similar adverse immigration consequences, or failing that, would have exercised his right to a jury trial. Defendant also made an offer to "elaborate on the reasons he immigrated to the United States, the ties, obligations, and opportunities he had here at the time of his plea, and the hardships he expected to face had he been forced to return to his native Mexico alone at the impressionable

---

[2]     The United States Citizenship and Immigration Services found defendant inadmissible to the United States because he had committed an offense relating to trafficking in a controlled substance in violation of section 212(a)(2)(C) of the Immigration and Nationality Act.

4

young age of eighteen years old." The district attorney opposed the motion, asserting that to show prejudice defendant was required to demonstrate that if properly advised he would not have pleaded guilty and it was reasonably probable a result more favorable to him would have resulted had he gone to trial.

The only issue adjudicated at the hearing on defendant's motion was whether defendant would have received a more favorable outcome had he rejected the plea bargain. The court thereafter denied the motion, explaining it found it "highly improbable" defendant, by rejecting the plea bargain, would have been offered a more favorable plea bargain and even more unlikely he would have been acquitted had he gone to trial. It thus appears the court did not consider the possibility defendant might have rejected the plea bargain even were it not reasonably probable he could have negotiated a more favorable bargain or would have obtained a more favorable outcome had he gone to trial. The Court of Appeal affirmed the order denying relief.

We granted review.

## DISCUSSION

### I.

Section 1016.5, subdivision (d) states the Legislature's purpose and intent in enacting that section: "The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty or nolo contendere is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special

5

consequences for such a defendant which may result from the plea.  It is also the intent of the Legislature that the court in such cases shall grant the defendant a reasonable amount of time to negotiate with the prosecuting agency in the event the defendant or the defendant's counsel was unaware of the possibility of deportation, exclusion from admission to the United States, or denial of naturalization as a result of conviction.  It is further the intent of the Legislature that at the time of the plea no defendant shall be required to disclose his or her legal status to the court."

Section 1016.5 thus requires the court accepting a plea to advise the defendant that "conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (*Id.*, subd. (a).)  The defendant is then entitled to "additional time to consider the appropriateness of the plea in light of the advisement . . . ." (*Id.*, subd. (b).)  The section contemplates a period during which the defendant, without risking the loss of the existing plea bargain, can reconsider its value in light of the immigration consequences that will result from it and attempt to negotiate a different bargain that will not have the same consequences.  (*Id.*, subds. (b) & (d).)  Section 1016.5 also provides a remedy for the failure to advise:  "If . . . the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization . . . , the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (*Id.*, subd. (b).)

Section 1016.5 does not expressly recite that a defendant seeking relief for a failure to advise must establish prejudice beyond showing that the conviction

6

may have immigration consequences. But in *Zamudio*, *supra*, 23 Cal.4th 183, we construed the section "to require that defendants, in order to obtain relief under subdivision (b) of the statute, demonstrate they were prejudiced by any failure of the court to provide complete advisements under subdivision (a)." (*Id.* at pp. 199-200.) We adopted the test for prejudice established in *People v. Watson* (1956) 46 Cal.2d 818, 836, as applied to a failure to advise of the consequences of a plea, explaining the defendant must establish " 'it is "reasonably probable" the defendant would not have pleaded guilty if properly advised.' " (*Zamudio*, at p. 210.) The test for prejudice thus considers what the defendant would have done, not whether the defendant's decision would have led to a more favorable result.

We have applied the same test in other situations. We recognized a defendant might decline to accept a bargain because it would result in a substantial restitution fine. (*People v. Walker* (1991) 54 Cal.3d 1013, 1023.) We also accepted the possibility a defendant might show prejudice by establishing he would not have accepted a plea offer had he been properly advised as to the length of time he would remain on parole following release from prison. (*In re Moser* (1993) 6 Cal.4th 342, 345, 353.) Although in *People v. McClellan* (1993) 6 Cal.4th 367, we rejected a defendant's claim that he was prejudiced by the failure to advise him his conviction would require that he register as a sex offender pursuant to section 290, we did so because the defendant had provided no evidence to support his claim (*McClellan*, at p. 378), thus implicitly recognizing that in some other case, a failure to advise of the sex registration requirement might prove to be prejudicial.

That a defendant might reject a plea bargain because it would result in deportation, exclusion from admission to the United States, or denial of naturalization is beyond dispute. The Legislature so recognized when it enacted

7

section 1016.5. (See *id.*, subd. (d).) This court has found that "criminal convictions may have 'dire consequences' under federal immigration law [citation] and that such consequences are 'material matters' [citation] for noncitizen defendants faced with pleading decisions." (*In re Resendiz* (2001) 25 Cal.4th 230, 250.) "[A] deported alien who cannot return 'loses his job, his friends, his home, and maybe even his children, who must choose between their [parent] and their native country.' " (*Zamudio*, *supra*, 23 Cal.4th at p. 209.) Indeed, a defendant "may view immigration consequences as the only ones that could affect his calculations regarding the advisability of pleading guilty to criminal charges" (*Resendiz*, at p. 253), such as when the defendant has family residing legally in the United States. "Thus, even before the Legislature expressly recognized the unfairness inherent in holding noncitizens to pleas they entered without knowing the consequent immigration risks (see § 1016.5, subd. (d), added by Stats. 1977, ch. 1088, § 1, p. 3495), we held that justice may require permitting one who pleads guilty 'without knowledge of or reason to suspect [immigration] consequences' to withdraw the plea." (*Resendiz,* at p. 250.) We therefore found that "affirmative misadvice regarding immigration consequences can in certain circumstances constitute ineffective assistance of counsel." (*Id.* at p. 240.)

The United States Supreme Court, in *Padilla v. Kentucky* (2010) 559 U.S. 356, ___ [130 S.Ct. 1473, 1478], similarly held that relief for the ineffective assistance of counsel may be available to a defendant whose attorney failed to advise him or her of the immigration consequences of a plea. It observed, "as a matter of federal law, deportation is an integral part—indeed sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." (*Padilla*, at p. ___ [130 S.Ct. at p. 1480], fn. omitted.) Further, " ' "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." ' [Citation.]

8

Likewise, we have recognized that 'preserving the possibility of' discretionary relief from deportation . . . 'would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.' " (*Id.* at p. ___ [130 S.Ct. at p. 1483].)

In sum, our Legislature, the United States Supreme Court, and this court have recognized that the defendant's decision to accept or reject a plea bargain can be profoundly influenced by the knowledge, or lack of knowledge, that a conviction in accordance with the plea will have immigration consequences. For that reason, and because the test for prejudice considers what the defendant would have done, not what the effect of that decision would have been, a court ruling on a section 1016.5 motion may not deny relief simply by finding it not reasonably probable the defendant by rejecting the plea would have obtained a more favorable outcome.

This is not to suggest the probability of obtaining a more favorable outcome is irrelevant. To the contrary, a defendant's assessment of the strength of the prosecution's case in relation to his or her own case is often a factor, and undoubtedly sometimes the determinative factor, in the decision to accept or reject a plea offer. A defendant convinced he or she is unlikely to avoid conviction thus might have few reservations about accepting a plea bargain that offers significant benefits over the probable consequences of proceeding to trial. Conversely, a defendant might decline to accept an offer if there is little to lose by rejecting it, particularly if acceptance would have significant adverse consequences. As we explained in *Resendiz*, a factor pertinent to the decision to accept or reject a plea may be the " 'disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer . . . .' " (*In re Resendiz*, *supra*, 25 Cal.4th at p. 253.) For that reason, "[i]n determining whether or not a defendant who has pled guilty would have insisted

9

on proceeding to trial had he received competent advice, an appellate court . . . may consider the probable outcome of any trial, to the extent that may be discerned." (*Id.* at p. 254.) But because the test for prejudice considers what the defendant would have done, that a more favorable result was not reasonably probable is only one factor for the trial court to consider when assessing the credibility of a defendant's claim that he or she would have rejected the plea bargain if properly advised.

We recognize such a rule poses a threat to the finality of convictions obtained through the plea bargaining process, particularly in cases such as this, where a defendant seeks relief many years after his or her plea has been entered and the difficulty of proving guilt may have become insurmountable. Nevertheless, the Legislature, by providing for section 1016.5 relief, has expressed its willingness to accept the threat to the finality of judgments "to promote fairness" to affected individuals. (§ 1016.5, subd. (d).)[3] In any event, several considerations should act to limit the number of cases where relief might be sought or granted.

First, section 1016.5 relief is available only if the trial court failed to provide the statutory advisement or if the record is silent on that subject; in the vast majority of cases the defendant will have been adequately advised and the

---

[3]     Section 1016.5, although not stating a time bar, limits relief with respect to pleas accepted prior to its effective date of January 1, 1978, but even there it provides: "Nothing in this section, however, shall be deemed to inhibit a court, in the sound exercise of its discretion, from vacating a judgment [entered on a plea accepted before January 1, 1978,] and permitting a defendant to withdraw a plea." (*Id.*, subd. (c).) Nonetheless, we have suggested a defendant seeking relief may be required to proceed with " 'reasonable diligence' " after learning that the plea will result in deportation, exclusion, or a denial of naturalization. (*Zamudio*, *supra*, 23 Cal.4th at pp. 203-204.)

10

record will reflect that the advisement was given. Second, relief is available only to persons who are not otherwise deportable, that is, who have not since their conviction engaged in other conduct that would trigger immigration consequences. Further, as observed by the United States Supreme Court in *Padilla v. Kentucky*, "an opportunity to withdraw the plea and proceed to trial—imposes its own significant limiting principle: Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea. . . . [T]he challenge may result in a *less favorable* outcome for the defendant . . . ." (*Padilla v. Kentucky*, *supra*, 559 U.S. at pp. ___-___ [130 S.Ct. at pp. 1485-1486].) And, as this court explained in *Resendiz*, "[t]he choice . . . that petitioner would have faced at the time he was considering whether to plead, even had he been properly advised, would *not* have been between, on the one hand, pleading guilty and being deported and, on the other, going to trial and avoiding deportation." (*In re Resendiz*, *supra*, 25 Cal.4th at p. 254.) The defendant thus must convince the court he or she would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow.

Finally, it remains true that the defendant bears the burden of establishing prejudice. (*Zamudio*, *supra*, 23 Cal.4th at p. 210.) To that end, the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised. It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances.

In sum, relief will be neither sought nor available in the vast majority of cases, and in those where relief may be available, a defendant may have significant reasons why not to seek it. But in those cases where relief is potentially available and the risks attending withdrawal of the plea do not dissuade

11

the defendant from seeking it, the court should give careful consideration to the defendant's claim that he or she would not have entered the plea had adequate advice been given, and should grant relief if convinced of the credibility of that claim, even if the court also concludes it is not reasonably probable the defendant would have obtained a better outcome.

## II.

Defendant argues that a court should grant section 1016.5 relief if it concludes the defendant, if properly advised, would not have entered into the plea bargain and would have sought to negotiate a different bargain that would not result in deportation, exclusion, or a denial of naturalization. The Attorney General argues instead that the existing test for prejudice, i.e., that prejudice is shown if the defendant establishes it was reasonably probable he or she would have rejected the plea if properly advised (*Zamudio*, *supra*, 23 Cal.4th at p. 210), should be reformulated to allow relief only if the defendant establishes a reasonable probability that if properly advised, he or she would not have pleaded guilty and *would have insisted on going to trial*. Under that test, that the defendant's decision might have been influenced by the existence of a different bargain or the hope of obtaining one, would be irrelevant.

The Attorney General's test is patterned on that expressed by the United States Supreme Court in *Hill v. Lockhart* (1985) 474 U.S. 52, in the context of a defendant's claim that his plea should be set aside because his attorney had misinformed him about his parole eligibility date. The court explained, "in order to satisfy the 'prejudice' requirement" that is the second prong of the test for granting relief for the ineffective assistance of counsel, stated by the high court in *Strickland v. Washington* (1984) 466 U.S. 668, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (*Hill v. Lockhart*, at

12

p. 59.)  But as the court later explained in *Roe v. Flores-Ortega* (2000) 528 U.S. 470, the *Hill v. Lockhart* test comprehends that prejudice is presumed by the loss of a fair trial or, as in *Roe v. Flores-Ortega*, the loss of an appeal.  "Under such circumstances, '[n]o specific showing of prejudice [is] required,' because 'the adversary process itself [is] presumptively unreliable.' " (*Roe*, at p. 483.)  To obtain relief on a claim that counsel's deficient performance caused the forfeiture of a proceeding, therefore, the defendant is required to demonstrate both that counsel's performance was deficient *and* that the deficiency actually caused the loss of the proceeding.  (*Ibid.*)

The Attorney General's analogy to the *Strickland* standard falls short. Relief under that standard is conditioned on the loss of a fair trial or other proceeding.  Section 1016.5, by contrast, is aimed at ensuring that the defendant has the opportunity to decide whether or not to accept a plea offer despite possible immigration consequences.  To establish prejudice, defendant must show that he would not have entered into the plea bargain if properly advised — a decision that might be based either on the desire to go to trial or on the hope or expectation of negotiating a different bargain without immigration consequences.  Indeed, section 1061.5 recites:  "It is . . . the intent of the Legislature that the court in such cases shall grant the defendant a reasonable amount of time to negotiate with the prosecuting agency in the event the defendant or the defendant's counsel was unaware of the possibility of deportation, exclusion from admission to the United States, or denial of naturalization as a result of conviction."  (§ 1016.5, subd. (d).) The section therefore expressly recognizes that the defendant's choice is not whether to (1) accept the proffered bargain or (2) go to trial.  Rather, it is whether to (1) accept the proffered bargain, *or* (2) accept or try to obtain a better bargain that does not include immigration consequences, *or* (3) go to trial.

13

The Attorney General asserts that permitting the court to consider factors other than probable success at trial undermines prosecutorial and judicial independence. The assertion assumes that to find the defendant would have rejected a plea bargain to negotiate a different bargain, the court must conclude a different bargain would have been offered by the prosecution and approved by the court. But again, a court deciding whether to grant relief considers *what the defendant would have done*, not what the result of the defendant's decision would have been. The court does not decide if the prosecution would have offered a different bargain; it considers evidence that would have caused the defendant to expect or hope a different bargain would or could have been negotiated. Nor does a court considering whether to grant section 1016.5 relief have the power to compel the prosecutor to make some other plea offer or agree to a different bargain; its authority extends no further than to "vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (§ 1016.5, subd. (b).) The prosecutor retains the authority to refuse to negotiate further, and the sentencing court retains the authority to reject any plea bargain reached by the parties.

In sum, we hold that section 1016.5 relief may be granted if the court is convinced the defendant, if properly advised, would have rejected an existing plea offer in the hope or expectation that he or she might thereby negotiate a different bargain, or failing in that, go to trial.

**III.**

Turning to the present case, defendant claims it is reasonably probable he would have negotiated an immigration-neutral bargain and, if not, gone to trial. Defendant and amici curiae make a number of assertions in support of that claim, maintaining, for example, that most criminal convictions result from plea bargains, the prevailing practice among defense counsel is to attempt to negotiate bargains

14

that will not have immigration consequences, and prosecutors are, or at least should be, amenable to such dispositions. Defendant further insists plea options were available to him that would not have resulted in deportation.

But as we have explained, for purposes of a grant of section 1016.5 relief, the critical question is whether the defendant would have rejected the plea bargain, not what the outcome of that decision would have been. That the defendant would have done so is not established by evidence that criminal prosecutions are resolved by plea bargains or an immigration-neutral bargain was possible. Nonetheless, in determining the credibility of a defendant's claim, the court in its discretion may consider factors presented to it by the parties, such as the presence or absence of other plea offers, the seriousness of the charges in relation to the plea bargain, the defendant's criminal record, the defendant's priorities in plea bargaining, the defendant's aversion to immigration consequences, and whether the defendant had reason to believe that the charges would allow an immigration-neutral bargain that a court would accept.

## IV.

Defendant offered to "testify, and to elaborate on the reasons he immigrated to the United States, the ties, obligations, and opportunities he had here at the time of his plea, and the hardships he expected to face had he been forced to return to his native Mexico alone at the impressionable young age of eighteen years old." But the only question litigated at the hearing on defendant's motion for section 1016.5 relief was whether defendant would have obtained a more favorable result had he withdrawn his plea. Whether the parties and the court simply assumed defendant could establish his decision to plead guilty would have been different had he been fully advised, or believed it did not matter unless he could also establish a reasonable probability he would have obtained a better result had he rejected the plea, is unclear, but in any event, the record does not disclose the basis

15

or depth of defendant's aversion to the immigration consequences of the plea he entered. The record does disclose that the plea did not result in a reduction in the charge filed against defendant and, although not dispositive on the point, suggests defendant had not previously been convicted. No particular reason appears why defendant would have been denied probation or would have received an aggravated sentence had he rejected the plea offer and gone to trial. That defendant, having little to gain by accepting the plea offer, would have rejected it thus is not impossible. Under the circumstances, we find the matter should be returned to the trial court to allow the court to conduct further proceedings at which defendant may offer such evidence as he can to convince the court that it is reasonably probable he would not have entered the plea had he been properly advised.

## DISPOSITION

The judgment of the Court of Appeal is reversed, and the court is directed to reverse the judgment of the trial court and remand the matter to that court for further proceedings in accordance with our opinion here.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**

16

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Martinez

_____

**Unpublished Opinion** XXX NP opn filed 12/9/11 – 6th Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**


_____

**Opinion No.** S199495
**Date Filed:** August 8, 2013

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Marcel B. Poché

_____

**Counsel:**

Sara E. Coppin, under appointment by the Supreme Court, for Defendant and Appellant.

Law Offices of J.T. Philipsborn, John T. Philipsborn; California Supreme Court Clinic at UC Davis School of Law and Aimee Feinberg for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Law Offices of Michael K. Mehr and Michael K. Mehr for Immigrant Legal Resources Center and Asian Law Caucus as Amicus Curiae on behalf of Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman, Sharon G. Birenbaum, Seth K. Shalit and Masha A. Dabiza, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Sara E. Coppin
11075 Treehenge Lane
Auburn, CA  95602
(530) 401-6891

Masha A. Dabiza
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-1305